COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia

JEFFERY TODD HIRSCHBERG, S/K/A
 JEFFREY TODD HIRSCHBERG

MEMORANDUM OPINION[*] BY
v.      Record No. 0203-22-1           JUDGE LISA M. LORISH
                                        DECEMBER 20, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

(Michael T. Soberick, Jr.; Dusewicz & Soberick, on brief), for
appellant. Appellant submitting on brief.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Jeffrey Todd Hirschberg challenges his conviction for possession of methamphetamine from

the Circuit Court of Gloucester County. Because he failed to preserve his argument that the

evidence was insufficient to convict him of this offense, we do not consider that argument here. We

also affirm the trial court's evidentiary decision to admit testimony about Hirschberg's prior

encounter with law enforcement.

BACKGROUND

A confidential informant, Douglas Batley, identified Hirschberg as a narcotics distributor in

Gloucester County. On November 19, 2020, three Gloucester County Sheriff's Investigators used

Batley to conduct a controlled purchase of narcotics from Hirschberg. The officers met with and

searched Batley before equipping him with $500 in "confidential Virginia State Police buy funds,"

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

as well as a recording device. Investigator Hubbard then drove Batley to a residence on Sandy Clay Lane in Gloucester County to make the controlled purchase.

Investigator Hubbard dropped Batley off on the road near the house and watched Batley walk through a tree line toward the property. However, he could not see the house from his position on the road. Batley had the recording device in his pocket.

Batley returned to Investigator Hubbard's vehicle twenty to thirty minutes later. He handed Hubbard the recording device and a baggie of suspected narcotics later tested and found to contain methamphetamine. Batley was paid $100 for the transaction. Recorded audio from the device included the interaction between Investigator Hubbard and Batley on the way to the purchase location, as well as the controlled purchase.

At trial, Batley identified Hirschberg in court as the person who sold him methamphetamine at the residence on Sandy Clay Lane. Batley explained that he arranged to purchase methamphetamine from Hirschberg over text message or Facebook Messenger and that Hirschberg proposed meeting at the residence on Sandy Clay Lane, where Batley believed Hirschberg lived.[1] And Batley testified that after he got out of Investigator Hubbard's vehicle, he called Hirschberg and walked up the driveway to the house. Batley explained that Hirschberg answered the door and the two went upstairs to his bedroom, where they "chitchatted" and completed the methamphetamine transaction.

Batley testified that he had listened to the audio captured by the recording device and confirmed at trial that the recording was "an accurate reflection of the conversation between" him and Hirschberg. The Commonwealth then played the recording for the jury, pausing several times to allow Batley to provide context for several statements made on the recording. Batley

---

[1] Charles Sparrer testified that Hirschberg was his roommate at the Sandy Clay Lane residence in November 2020.

identified his and Hirschberg's voices on the recording. The voice that Batley identified as Hirschberg's made several statements, including: "They got my pistol," "My blue cooler, I had everything in there," and "They're charging her with my shit. I was driving." The voice also stated: "It was a Bulldog Short. I can't claim the gun."

On cross-examination, the defense played the audio recording again and Batley acknowledged that a voice that was not Hirschberg said, "hi." Batley testified that he did not recall the identity of the speaker. He also admitted that he sold illegal drugs while he was working as a confidential informant. Finally, the defense questioned him about favorable treatment he received in a plea agreement because of his cooperation.

The Commonwealth then sought to elicit testimony from Deputy Shiflett about a traffic stop involving Hirschberg that occurred nine days before the controlled purchase. The defense objected to Deputy Shiflett's testimony, arguing that its "sole purpose" was to "bolster" Batley's identification of Hirschberg on the audio recording and that the potential for unfair prejudice outweighed the probative value of the testimony. In response, the Commonwealth argued the testimony was relevant to proving Hirschberg's identity as one of the voices on the recording. The trial court overruled the defense's objection and allowed the testimony for the purpose of proving the identity of Hirschberg's voice on the recording. The trial court gave the jury the following limiting instruction with the agreement of the parties: "Ladies and gentlemen, you're going to next hear the testimony of Deputy Shiflett. I want to let you know that the testimony of Deputy Shiflett may only be considered by you for the purpose of identifying the other voice on the recording that has been introduced as Exhibit 3."

Deputy Shiflett testified that nine days before the controlled purchase, he stopped a vehicle Hirschberg was driving for an expired registration. There were two passengers with Hirschberg. During a search of the vehicle, Deputy Shiflett saw a smoking device on the front

passenger seat and found on the front passenger floorboard a blue cooler and a black zippered pouch containing a Target Bulldog .357 Magnum revolver. Suspected methamphetamine, suspected marijuana, syringes, scales with powdery residue, and smoking devices were inside the cooler. Deputy Shiflett arrested the female passenger in the front seat, but not Hirschberg.

After the Commonwealth rested its case-in-chief, the defense rested without presenting evidence or making a motion to strike. The jury convicted Hirschberg of possessing methamphetamine. Hirschberg did not move to set aside the verdict. He now appeals.

## ANALYSIS

Hirschberg argues that the evidence at trial is insufficient as a matter of law because Batley's testimony is inherently incredible. He also contends that the trial court abused its discretion by admitting Deputy Shiflett's testimony about the prior traffic stop.

### A. Sufficiency of the Evidence

Hirschberg failed to preserve any argument as to the sufficiency of the evidence, so we do not consider it. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

Hirschberg argues that his sufficiency challenge based on Batley's purported inherent incredibility "is well preserved in the closing argument of trial counsel." But a challenge to the sufficiency of the evidence to sustain a conviction is a legal issue that the court will decide. *See Dickerson v. Commonwealth*, 58 Va. App. 351, 357 (2011). In a bench trial, the defense may preserve a challenge to the sufficiency of the evidence through an "appropriate argument made

- 4 -

during closing." *Id.* at 356. In a jury trial, however, the defendant must preserve a challenge to the sufficiency of the evidence in a motion to strike or by moving to set aside the verdict. *Commonwealth v. Bass*, 292 Va. 19, 33 (2016). Neither occurred here.

Finally, Hirschberg does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and this Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

### B. Deputy Shiflett's Testimony

We review Hirschberg's argument that the trial court erred in admitting Deputy Shiflett's testimony for abuse of discretion. *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). We will find such an abuse of discretion "only when reasonable jurists could not differ about the correct result." *Id.*

"Evidence of other crimes, wrongs, or acts is inadmissible if offered merely to show the accused's propensity to commit the crime for which he is charged." *Conley v. Commonwealth*, 74 Va. App. 658, 670 (2022). Such evidence is admissible, however, "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show . . . identity." *Id.* (quoting Va. R. Evid. 2:404(b)). If the trial court "determine[s] that the 'prior bad acts' evidence is relevant, and not mere 'propensity evidence,' the [c]ourt must still determine whether the risk of unfair prejudice outweighs the probative value of the evidence." *Id.* at 671. "The responsibility for balancing the two considerations rests in the trial court's discretion and we will not disturb the court's determination in the absence of a clear abuse of discretion." *Id.* at 673 (quoting *Kenner v. Commonwealth*, 299 Va. 414, 427 (2021)).

Hirschberg contends that the trial court abused its discretion by admitting Deputy Shiflett's testimony because "the issue of identity was not in question during trial," so the testimony had no probative value. We disagree. Hirschberg pled not guilty to the charge, and

the Commonwealth bore the burden of proving every element of the offense beyond a reasonable doubt. *Kenner*, 299 Va. at 425. The defense never conceded that it was Hirschberg's voice on the recording. To the contrary, Hirschberg vigorously impeached Batley's credibility on cross-examination, including his testimony about the recording. Hirschberg also asserted both in his opening statement and closing argument that the Commonwealth's case rested entirely on Batley's credibility and that the Commonwealth could not prove beyond a reasonable doubt that Hirschberg was even present at the residence at the relevant time. Therefore, the question of identity remained in dispute.

Deputy Shiflett's testimony corroborated Batley's identification of the voice on the recording as Hirschberg by linking the speaker's recorded statements about driving, a Bulldog pistol, and a blue cooler with the recent traffic stop where Deputy Shiflett seized those very items from a vehicle Hirschberg was driving. Thus, the testimony supports a reasonable inference that the speaker on the recording and the driver of the vehicle Deputy Shiflett stopped were the same person, and was probative as to the identity issue.

Hirschberg argues that—even if probative—the trial court erred in admitting the testimony because any probative value was outweighed by the risk of unfair prejudice. "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Commonwealth v. Proffitt*, 292 Va. 626, 636 (2016) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)).

Hirschberg contends that Deputy Shiflett's testimony unfairly prejudiced him by showing that he was "a drug user," was "involved in drug events," and "allegedly ha[d] a bad character because he didn't step up . . . and take responsibility for what was in the car." He also asserts

- 6 -

that "[t]he Commonwealth's real motivation" was to argue to the jury that if Hirschberg "had drugs with his blue cooler, then that is him on the tape and that is him selling drugs now."

The question here is not whether there was *any* risk of unfair prejudice, but whether that risk was so great it *substantially* outweighed the probative value of the evidence. *See Lee*, 290 Va. at 252 ("Evidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of *unfair* prejudice." (quoting *Gamache v. Allen*, 268 Va. 222, 227 (2004))). We have held that "[t]he prejudicial effect of the evidence of other crimes [may be] limited by the instructions of the court to the jury . . . [delimiting] the jury's use of the evidence to that which was permissible and prohibit[ing] its use for any other purpose." *Winston v. Commonwealth*, 32 Va. App. 864, 872 (2000) (first four alterations in original). And "juries are presumed to follow limiting instructions." *Abunaaj v. Commonwealth*, 28 Va. App. 47, 57 (1998). Nothing in the record rebuts the presumption that the jury followed the trial court's clear instruction to consider Deputy Shiflett's testimony only for the purpose of determining the identity of the speaker on the recording, rather than the improper purposes Hirschberg asserts. Additionally, when the Commonwealth referenced Deputy Shiflett's testimony in its closing argument, it did so within the limits set by the trial court's instruction.

The trial court mitigated the risk of unfair prejudice with its instruction limiting the jury's consideration of Deputy Shiflett's testimony. Therefore, the trial court did not abuse its discretion by concluding that the mitigated risk of unfair prejudice did not outweigh the testimony's probative value and admitting Deputy Shiflett's testimony.

## CONCLUSION

For these reasons, we affirm Hirschberg's conviction for possession of methamphetamine.

*Affirmed.*